# Richmond

ANNIE P. MAWYER v. COMMONWEALTH OF VIRGINIA.

December 3, 1962.

Record No. 5509.

Present, All the Justices.

*Paul Whitehead* (*J. Frank Shepherd*, on brief), for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

Eggleston, C. J., delivered the opinion of the court.

Annie P. Mawyer, hereinafter referred to as the defendant, was arrested on a warrant charging her with operating a motor vehicle on the highway while under the influence of intoxicants. She was convicted in the county court and appealed to the circuit court where her case was heard by a jury which found her guilty of the offense charged and fixed her punishment at a fine of $150. From a judgment entered upon that verdict she has appealed.

In her assignments of error the defendant alleges that the lower court erred in (1) refusing to set aside the verdict as contrary to the law and the evidence; (2) refusing to grant certain instructions offered by her; and (3) refusing to grant a mistrial because of the improper argument of the Commonwealth's attorney. However, in the argument before us the assignment based on the alleged insufficiency of the evidence was not pressed and need not be considered. The facts pertinent to the other assignments will be related.

W. C. Hart, a state trooper, testified that on August 2, 1961, about 5:00 p. m., he saw the defendant driving an automobile in a northerly direction along U. S. Highway 29, near Lovingston in Nelson county. He noticed that the right wheels of the car were on the shoulder and the left wheels on the hard surface. Upon following the car some distance he observed that it veered back and forth in the right-hand lane of travel and several times ran partly along the right-hand shoulder. Upon sounding his siren the car stopped suddenly in the right-hand lane.

The defendant was directed to remove her car from the traveled portion of the highway and produce her operator's license. The trooper observed that she "fumbled considerably" in removing the license from her wallet; that her eyelids were "very drooped," and that he smelled the odor of alcohol on her breath. He placed the defendant under arrest, telling her that she was charged with driving while under the influence of alcohol and that it was necessary that she

be taken to Lovingston, the county seat, where she would be admitted to bail or imprisoned.

The defendant got out of the car and, as the trooper testified, "she was staggering" and steadied herself by holding onto her car and his. He further said that "her speech was very slurred, almost incoherent." At first she told the officer that she did not drink, but later said that she "had had one can of beer." She denied having drunk any whiskey.

In the car the officer found an empty beer can and an empty ginger-ale bottle. Beer had been spilled on the floor of the car.

The deputy sheriff testified that when the defendant reached his office at Lovingston she was "unsteady on her feet," "mixed up in her speech," and smelled of alcohol.

The defendant testified that at the time of her arrest her health was "wretched" because of a major operation the preceding March, and that for some time she had been taking "pills" for her "nerves." Her story was that on the day of her arrest she had spent the day and lunched with her sister; that neither had anything to drink; that shortly before 5:00 p. m. she took her sister to a local store where the sister purchased some groceries and four cans of cold beer; and that upon returning to the sister's home the two sat in the car for a short time.

She further said that she "felt sick" and needed to take her medicine; that her sister opened a can of beer and suggsted that she take the medicine "with a swallow or two of beer." This, the defendant said, she did. She also said that this was all of the alcoholic beverage of any kind which she partook of during that day. After swallowing the small quantity of beer she handed the partly filled can to her sister who, without the defendant's knowledge, left it in the car. In driving from her sister's home to the place where she was later arrested the can overturned and the contents spilled on the floor of the car.

The defendant insisted that at the time of her arrest she was "scared" and "nervous" and because of this condition was unsteady on her feet. She testified clearly and positively that the "pills" which she had been taking for her nervous condition did not make her "dizzy" or affect the manner of her driving.

Speaking of her condition when she reached Lovingston with the state trooper the defendant said, "I was sick and nervous. I almost asked him to take me to a doctor."

The defendant's story as to what occurred at the home of her sister was corroborated by the testimony of the latter.

■ The main contention of the defendant is that the lower court erred in refusing to grant Instruction "D" which reads as follows:

"The court instructs the jury that if the evidence raises a reasonable doubt in your mind as to the actions of the accused, while and after she was being arrested, whether these actions and mannerisms were caused by alcohol, or whether they were caused by the fact that the accused had been sick, not caused by alcohol, and was in a nervous condition, then you shall find the accused not guilty."

The argument is that under this instruction the jury might have adopted the defendant's "theory" that her "actions and mannerisms," "while and after she was being arrested," were caused by sickness and nervousness and not by alcohol.

According to the evidence, the "actions and mannerisms" of the defendant at the time of her arrest and thereafter were her manner of driving; the smell of alcohol on her breath; her slurred and incoherent speech; her fumbling with her wallet in attempting to produce her driving license; and her staggering and inability to walk normally after getting out of the car. Of these she attributed only her staggering and manner of walk to nervousness. She admitted that she was unsteady upon getting out of the car, as the trooper had testified, but said this was because she was "nervous and shaking."

There is no evidence from the defendant or any other source that her manner of driving, which was the real crux of the case, was caused by sickness or nervousness. As has been said, she denied that it was caused by the "pills" she had been taking. Similarly, there is a lack of evidence that the incoherent manner of her speech or the fumbling with her wallet was attributable to either of these causes. Manifestly, the odor of alcohol on her breath, detected by both the trooper and the deputy sheriff, could not have been caused by sickness or nervousness. Thus there is no evidence to support the instruction as requested and it was properly refused.

■ Complaint is made that the lower court erred in refusing to grant Instruction "E" which reads thus:

"The court instructs the jury that if you believe from the evidence, or if the evidence raises a reasonable doubt in your mind that at the time the accused was driving her automobile she was not under the influence of intoxicants, then you shall find the accused not guilty."

The substance of this instruction was adequately covered by other instructions which told the jury that in order to convict the defendant they must believe from the evidence, "beyond a reasonable doubt," that she was "driving a motor vehicle while under the influence of intoxicants, as charged in the warrant."

Instruction "G", requested by the defendant and refused, reads thus:

"The court instructs the jury that in this case the accused is not being tried for reckless driving but is beeing tried only on the charge of driving under the influence of intoxicants; and although the jury may believe beyond a reasonable doubt that the accused, Annie Phillips Mawyer, is guilty of reckless driving, yet if they are not convinced beyond a reasonable doubt, from the evidence, or if they entertain a reasonable doubt as to whether or not she was driving under the influence of intoxicants, then you shall find the accused not guilty."

This instruction was properly refused. The first portion was confusing and misleading in that it directed the attention of the jury to an offense with which the defendant was not charged. The remaining portion of the instruction was adequately covered in other instructions granted.

The simple issue before the jury was whether at the time of her arrest the defendant was driving under the influence of intoxicants. We find that that issue was clearly and adequately submitted to the jury by proper instructions.

The final contention of the defendant is that the lower court should have granted a mistrial because of what is characterized as the improper argument of the attorney for the Commonwealth. During his final summation the attorney for the prosecution said: "I am not asking you to send Mrs. Mawyer to jail, we don't do it in Judge Wheeler's court unless it is a second or third or fourth offense or something of that sort, all I am asking in this case is a conviction of Mrs. Mawyer if she is guilty and deserves conviction and fine her $100. That is what was asked for in Judge Wheeler's court and that is what I am asking for in this court. I don't want you to treat her any differently here than we would anybody else in the other court."

The contention is that this argument violated the principle that on an appeal from a conviction in the trial justice or county court the jury should not be informed of the quantum of punishment imposed in the lower court. See *Green* v. *Commonwealth*, 170 Va. 619, 620, 195 S. E. 520, 521; *Gravely* v. *Deeds*, 185 Va. 662, 664, 40 S. E. 2d 175, 176; *Baylor* v. *Commonwealth*, 190 Va. 116, 119, 56 S. E. 2d 77, 78.

We do not agree with this contention. In the first place, the attorney for the Commonwealth did not disclose to the jury whether the county court had complied with his request and imposed on the defendant the fine suggested by him or what punishment had been inflicted on her in that court.

However, the argument was close to the borderline and should not have been made. But any possible prejudice was promptly and clearly forestalled by the action of the lower court which, upon objection of counsel for the defendant, told the jury: "We are not concerned here with what occurred in some other court. * * * Anything that happened in any other court has nothing to do with this trial."

On the whole we find no error in the proceedings below and the judgment is

*Affirmed.*